**George C. ARMITAGE, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 139–89C, 568–89C, 632–89C, 690–89C, 90–53C.

United States Claims Court.

April 18, 1991.

See also 22 Cl.Ct. 206.

Ira M. Lechner, Washington, D.C., for plaintiffs. Michael B. Waitzkin and Rima Sirota, of counsel.

Agnes M. Brown, with whom were Acting Asst. Atty. Gen. Stuart M. Gerson, and David M. Cohen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This case is before the court on the Government's motion to dismiss 134 plaintiffs for lack of subject matter jurisdiction. Plaintiffs in these consolidated cases allege that they were and are entitled to premium and overtime pay for regularly-scheduled overtime, Sunday and holiday hours during authorized leave from work under the "leave with pay" provisions of the Federal Employees Pay Act ("Title 5").[1] *See* 5 U.S.C. §§ 6303, 6307, 6322, and 6323 (1988). Defendant contends that the exclusive method for resolving the pay disputes of the employees at issue is the grievance procedure of their unions' collective bargaining agreements. Several questions are presented: 1) are any of the plaintiffs' claims barred by the statute of limitations; 2) if not barred by the statute of limitations, are the plaintiffs covered by a bar-

gaining agreement; and 3) if covered by a bargaining agreement, does the agreement exclude from its purview the plaintiffs' pay disputes. For the reasons which follow, the court concludes that the claims of one plaintiff are barred by the statute of limitations, that all of the plaintiffs subject to the motion are or were covered by collective bargaining agreements, and that the relevant bargaining agreements do not specifically exclude plaintiffs' pay disputes. The defendant's motion for partial dismissal is granted.

## BACKGROUND

All of the plaintiffs whose claims are the subject of this motion are or were employed by defendant as police officers at various facilities throughout the United States. The Government's motion seeks to dismiss 134 of the 268[2] plaintiffs in this action. These 134 plaintiffs are or were police officers at (1) the Naval Education and Training Center, Newport, Rhode Island ("NETC plaintiffs"); (2) Hill Air Force Base, Utah ("Hill AFB plaintiffs"); (3) the Naval Air Station, Patuxent River, Maryland ("Patuxent River plaintiff"); and (4) the Naval Station, Pearl Harbor, Hawaii ("Pearl Harbor plaintiffs"). The following facts are uncontested.

### A. *NETC Plaintiffs*

Three of the NETC plaintiffs are addressed by defendant's motion. They filed in this court on October 18, 1989 in *Adams v. United States*, No. 568–89C.[3] Plaintiff Alfred W. Hill was employed as a police officer at the NETC from August 4, 1975 until December 12, 1975, as a guard from July 19, 1976 until July 16, 1977, and again as a police officer from July 17, 1977 until February 24, 1979 when he retired. Plaintiff Richard A. Hagerman was employed as a police officer at NETC from May 29, 1984 until June 7, 1986 when he was transferred. Plaintiff Mary E. Martin was em-

1. 5 U.S.C. § 5101 *et seq.* (1988).

2. There are 287 plaintiffs named in these consolidated cases. However, 19 plaintiffs named in *Adams v. United States,* No. 568–89C (Cl.Ct.

October 18, 1989), were mistakenly named again in *Aiken v. United States,* No. 690–89C (Cl.Ct. December 21, 1989).

3. There are a total of 104 plaintiffs in *Adams.*

ployed as a police officer at NETC from August 11, 1980 until August 16, 1986 when she was transferred. Prior to their transfers, Hagerman and Martin were at all relevant times members of the collective bargaining unit at issue. At all relevant times, the NETC collective bargaining unit was represented by the Fraternal Order of Police ("FOP") Lodge 3–F.

The current bargaining agreement between NETC and FOP, entered into on January 6, 1988, defines a grievance as "a request ... by an employee ... for personal relief in a matter of concern or dissatisfaction which is subject to the control of the Commander or the Lodge." This agreement excludes from grievance procedures matters concerning both "[t]he content of published agency policy" and the matters listed in the "Summary of Typical Matters Excluded From Grievance Procedure and Arbitration." The "Summary" excludes matters pertaining to the "enforcement of Office of Personnel Management rules." Despite efforts by defendant, it was unable to locate copies of any prior bargaining agreements between NETC and FOP. However, the declaration of Bruce R. Goodrich, head of the Labor and Employee Relations Division at NETC, recites that he was involved in the negotiations of the agreements and that he is familiar with the contents of those agreements. He declares that "[n]o collective bargaining agreement in effect between NETC and FOP Lodge 3–F since January 1, 1982 has contained a provision excluding Fair Labor Standards Act claims from the negotiated grievance procedure."

### B. *Hill AFB Plaintiffs*

Thirteen of the Hill AFB plaintiffs are addressed by defendant's motion to dismiss. Plaintiffs James C. Dahl and Clarence D. Christensen filed their claims on January 17, 1990 in *Anderson v. United States*, No. 90–53C.[4] All of the other Hill AFB plaintiffs subject to the motion filed on December 21, 1989 in *Aiken v. United States*, No. 690–89C.[5] Of the thirteen plaintiffs, two have separated from their positions since their claims arose, one other employee has transferred, and a fourth has been promoted out of the bargaining unit. Prior to leaving their positions, these four employees were at all relevant times members of the bargaining unit at issue. The remaining Hill AFB plaintiffs were at all relevant times members of the collective bargaining unit. All of the Hill AFB plaintiffs subject to defendant's motion are or were in a unit represented by the American Federation of Government Employees ("AFGE").

The bargaining agreements relevant to the time period here involved are agreements between Air Force Logistics Command and AFGE. The current bargaining agreement became effective May 10, 1989. Three prior agreements relevant to plaintiffs' claims contained identical grievance procedures. The first of these agreements was effective from May 3, 1979 until June 28, 1982; the second was effective from June 28, 1982 until October 22, 1986; and the third was effective from October 22, 1986 until May 10, 1989. Each of the agreements states that the grievance procedures "constitute the sole and exclusive procedure available ... for the resolution of grievances applicable to any matter involving working conditions, or any matter involving the interpretation and application of policies, regulations, and practices of the Air Force...." Pay claims are not expressly excluded by any of the agreements.

### C. *Patuxent River Plaintiff*

Plaintiff Robert E. Marvin filed in this court on March 17, 1989 in *Armitage v. United States*, No. 139–89C.[6] Marvin was employed as a police officer at Patuxent River from January 2, 1980. On February 21, 1988, Marvin was promoted to a supervisory position outside the bargaining unit and on April 21, 1990 he was separated

---

4. There are a total of 10 plaintiffs in *Anderson.*

5. There are a total of 31 plaintiffs in *Aiken.* This total mistakenly includes 19 plaintiffs already named in *Adams,* No. 568–89C.

6. There are 25 plaintiffs in *Armitage.*

from his position. Prior to his promotion, he was at all relevant times a member of the collective bargaining unit at issue. The unit was represented by FOP from April 23, 1980 until March 5, 1986. Since March 5, 1986, the bargaining unit has been represented by the AFGE, Local 1603.

FOP entered into two collective bargaining agreements on behalf of unit employees. The first was effective April 23, 1980, and the second was effective on August 12, 1983. The 1980 agreement defined a grievance as, among other things, "a complaint ... by a bargaining unit employee concerning a matter relating to the employment of the employee...." Although the agreement excluded various matters from coverage of the grievance procedures, it did not expressly exclude claims relating to pay. The 1983 agreement similarly defined grievances and likewise did not exclude pay claims. On March 5, 1986, AFGE 1603 was certified as the new exclusive representative of Patuxent River police officers. On May 23, 1986, AFGE entered into a Memorandum of Understanding with the Naval Station that revised the grievance procedures. The Memorandum again broadly defined grievance and did not exclude pay claims. The AFGE Memorandum applied to Marvin until he was promoted on February 21, 1988.

#### D. *Pearl Harbor Plaintiffs*

These 117 plaintiffs filed their claims on November 20, 1989 in *Abella v. United States*, No. 632–89C.[7] Twelve of the plaintiffs have separated from their positions since their claims arose, 11 of the plaintiffs have transferred, and three have retired. Prior to leaving their positions, these 26 employees were at all relevant times members of the bargaining unit at issue. The remaining Pearl Harbor plaintiffs were at all relevant times members of the collective bargaining unit.

The bargaining agreements relevant to the time period here involved are an agreement between the Naval Station, Pearl Harbor, Hawaii, Naval Base Police Department and AFGE (AFL–CIO), Local 882, effective May 5, 1982; an agreement between the same organizations, effective September 18, 1985; and an agreement between the Naval Station, Pearl Harbor, Hawaii, Pearl Harbor Police Division and the Federal Firefighters Association ("FFA"), Police and Guard Chapter, Unit 1, effective September 20, 1989. All of these agreements defined a grievance as, among other things, "any complaint by any Unit employee concerning any matter relating to the employment of the employee." Although the three agreements excluded various matters from coverage of the grievance procedures, they did not expressly exclude pay claims.

### DISCUSSION

The issue is whether this court has jurisdiction over the claims of the above described plaintiffs. Relying on the rationale of *Carter v. Gibbs*, 909 F.2d 1452, 1458 (Fed.Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), defendant contends that jurisdiction is lacking as to claims that arose when claimants were bargaining unit members since they could have raised those claims in the negotiated grievance procedures.[8] Defendant also argues that a two-year statute of limitations applies to all plaintiffs' claims and that the claims of certain individuals are completely time-barred. Plaintiffs offer several responses. First, they contend that neither the Civil Service Reform Act ("CSRA")[9] nor the relevant bargaining agreements bar these plaintiffs from seeking relief in this court. With respect to the particular groups of plaintiffs, plaintiffs contend that the Government has not offered sufficient proof that there were collective bargaining agreements in place and

---

**7.** Defendant moves to dismiss all 117 plaintiffs in *Abella.*

**8.** The Government does not contend that the court lacks jurisdiction to entertain claims that arose after plaintiffs left the bargaining unit.

**9.** 5 U.S.C. § 7101 *et seq.*

that if there were, these agreements did not in fact exclude plaintiffs' pay claims. Plaintiffs also argue that, even if *Carter* raises a bar, the claims of those plaintiffs who retired, died, transferred, or were promoted out of the bargaining unit are not affected by the relevant bargaining agreements or the CSRA. Finally, they contend that the general six-year statute of limitations [10] applies to this action and not the Fair Labor Standards Act ("FLSA") [11] two-year limitations period. [12]

▮ The court will begin with the latter issue. In an earlier opinion in this proceeding, the court held that plaintiffs' claims for backpay under the leave with pay statutes are subject to the Title 5 six-year limitations period since that statute is the source of plaintiffs' entitlement, if any. *See Armitage v. United States*, 22 Cl.Ct. 206, 210 (1990). The Government's contention that the claims of NETC plaintiff Alfred Hill and two Hill AFB plaintiffs, Gene Bone and Walter Gardner, are barred is based on a two-year statute of limitations. Because the longer limitations period is applicable, however, only Hill's claims are wholly barred. He retired on February 24, 1979, but did not file his claims until October 18, 1989. Bone separated on August 25, 1988, and Walter H. Gardner transferred on July 4, 1987. Thus, they are not time-barred. [13]

10. *See* 28 U.S.C. § 2501 (1988).

11. 29 U.S.C. §§ 201–219 (1988).

12. *See* 29 U.S.C. § 255(a).

13. As discussed below, however, they are barred by virtue of the CSRA, *see infra* p. 773.

14. *Carter* did not address whether a change in employment or bargaining unit membership status after the time the employees' claims arose would affect the result. In *Aamodt v. United States*, 22 Cl.Ct. 716 (Cl.Ct.1991), however, the court held that if the grievance procedure was the exclusive remedy for claims that were grievable when they arose, the court lacks jurisdiction regardless of whether the employee subsequently left the bargaining unit. Thus, the fact that plaintiffs retired, died, transferred, or were promoted out of the bargaining unit and may no longer be "employees" within the meaning of the CSRA or bargaining agreements does not

▮ In *Carter*, the Federal Circuit held that the CSRA made grievance procedures in bargaining agreements the exclusive method for resolving FLSA overtime disputes between parties to those agreements unless the parties specifically provided otherwise. The court concluded that the CSRA's exclusivity provision precluded plaintiffs from obtaining judicial review of their overtime claims. That provision states that negotiated grievance procedures in a collective bargaining agreement "shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). As the court observed, Congress through the CSRA " 'comprehensively overhauled the civil service system,' " 909 F.2d at 1455 (quoting *Lindahl v. OPM*, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985)), and "narrowly circumscribed the role of the judiciary in its carefully crafted civil service scheme," *id.* at 1456. [14]

### A. NETC Plaintiffs

All of the NETC plaintiffs left government service in 1986 or earlier. The only NETC agreement produced by the Government, however, was not executed until January 6, 1988. In place of the prior agreements, the Government offers the declaration of Bruce R. Goodrich, head of the

afford jurisdiction with respect to claims arising during unit membership. The court noted that "persons who transferred to other government bases prior to filing their claims in this court are still employed by 'an agency' and so they may be 'employees' within the definition of the CSRA." *Aamodt*, at 717 n. 6. However, the transferee plaintiffs in *Aamodt* were no longer members of any bargaining units at issue in that case, and claims which accrued after the plaintiffs transferred were not raised in the complaint. Likewise in this case, the claims of plaintiffs which arose after they transferred are not at issue. The complaint in this action only advances claims against the plaintiffs' pre-transfer agency. The court in *Aamodt* also noted that plaintiffs promoted to a nonsupervisory position were in a unique situation. As a result of their promotion, they were excluded from the bargaining unit. However, they still had a claim for backpay after their promotion. Accordingly, the court only lacked jurisdiction as to claims accruing prior to the promotion. *Id.*, at 721 n. 10.

Labor and Employee Relations Division at NETC. Goodrich stated,

I conducted a diligent search of my files, but was unable to locate copies of any prior collective bargaining agreements between NETC and FOP Lodge 3-F. [ ] I am familiar with the contents of all the collective bargaining agreements that have been in effect between NETC and FOP Lodge 3-F since January 1, 1982, as I was involved in the negotiations culminating in the signing of those agreements. [ ] No collective bargaining agreement in effect between NETC and FOP Lodge 3-F since January 1, 1982 has contained a provision excluding Fair Labor Standards Act claims from the negotiated grievance procedure.

■ Plaintiffs contend that since the Government's motion is entirely dependent on the existence and terms of the bargaining agreements, that this secondary evidence of the prior bargaining agreements and the exclusions contained therein is not sufficient to support defendant's motion to dismiss. Plaintiffs argue that the Government must prove that there are applicable prior bargaining agreements and that these agreements do not exclude their Title 5 claims.[15]

In support of their argument plaintiffs cite *Sylvania Elec. Prods., Inc. v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir.1965), which states, "where the missing original writings in dispute are the very foundation of the claim ... more strictness in proof is required than where the writings are only involved collaterally." *See also Von Brim-er v. Whirlpool Corp.*, 362 F.Supp. 1182, 1187 (N.D.Cal.1973) (refusing to allow plaintiffs to rely on a poor copy of the document upon which their claims were partly based). Plaintiffs also refer to *United States v. Johns–Manville Corp.*, 259 F.Supp. 440 (E.D.Pa.1966), where the court held that the non-moving party and the court are "entitled to have the full terms of the contracts (rather than a summary) submitted to [them] if a fact finder is to base a finding on such terms...." *Id.* at 458.

■ Plaintiffs' argument is inapposite. "[W]hen a question of the [court's] jurisdiction is raised, either by a party or by the court on its own motion, ... the court may inquire, by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *see also Indium Corp. of Am. v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985); *Smith v. Atlantic Richfield Co.*, 533 F.Supp. 264, 265 (E.D.Pa.1982). In *Mortensen v. First Fed. Savs. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977), the court stated,

Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

---

15. Plaintiffs also argue that Goodrich's statement that the agreement did not exclude FLSA claims is entirely irrelevant as to whether the agreement excluded their claims which arise under the leave with pay provisions of Title 5, *see Armitage*, 22 Cl.Ct. at 210, and therefore the Government has not proven the court lacks jurisdiction. It is not clear why the plaintiffs have not more generally asserted this argument since it would seem to be applicable to all plaintiffs. In any case, the court finds that the fact that the declaration characterizes plaintiffs' claims as FLSA claims is unimportant. Under *Carter*, there is no principled basis to distinguish between FLSA overtime claims and overtime claims which arise under the leave with pay provisions of Title 5. The rationale of *Carter* reflects a distinct inertia created by earlier Su-

preme Court decisions construing the CSRA and plainly suggests a preference in the present circumstance for a non-judicial remedy. *See Aamodt*, at 719. "We have consistently heeded 'the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress.' ... We also stressed that courts 'should abstain completely from inventing other remedies when Congress has set up a complete integrated statutory scheme.'" *Carter*, 909 F.2d at 1456 (quoting *Volk v. Hobson*, 866 F.2d 1398, 1402–03 (Fed.Cir.1989)). "[I]t is 'inappropriate' to 'supplement' the 'comprehensive procedural and substantive provisions' of the CSRA." *Carter*, 909 F.2d at 1456 (quoting *Bush v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983)).

court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. Furthermore, "a party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist." *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976).

■ Relying on Goodrich's declaration, defendant contends that the plaintiffs were covered by bargaining agreements when their claims arose and that these agreements did not exclude their pay claims. Plaintiffs have not responded to Goodrich's declaration or offered affidavits of their own to the contrary. Goodrich's declaration is based on personal knowledge. In the absence of evidence to the contrary, the court finds that prior bargaining agreements did exist and that they did not exclude Title 5 overtime pay claims.

As to the 1988 bargaining agreement (which was produced), plaintiffs contend that the agreement excludes their claims from the grievance procedures. The agreement excludes matters concerning both "[t]he content of published agency policy" and the matters listed in the "Summary of Typical Matters Excluded From Grievance Procedure and Arbitration." The "Summary" excludes matters pertaining to the "enforcement of Office of Personnel Management rules." Plaintiffs argue that their claims, in part, seek to enforce the rules promulgated by the Office of Personnel Management ("OPM") in response to *Lanehart v. United States*, 818 F.2d 1574 (Fed. Cir.1987), and therefore come within the exclusions.

The language of the exclusions is far too broad to meet the level of specificity required by *Carter* to exclude plaintiffs' claims from their negotiated grievance procedure. The exclusions say nothing about pay claims. Plaintiffs' interpretation of these provisions would exclude from the grievance procedure virtually any dispute

that directly or by implication involves OPM rules or agency policy. Such an interpretation is incompatible with the CSRA. As the court held in *Carter*, the intent of Congress was that the CSRA would provide an "integrated scheme of administrative and judicial review," *United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988). Based on Goodrich's declaration and the 1988 bargaining agreement, the court concludes that the NETC plaintiffs were at all relevant times covered by a bargaining agreement that did not exclude plaintiffs' claims from its grievance procedures. Thus, the court concludes that it lacks jurisdiction of those claims by NETC plaintiffs which arose while they were bargaining unit members.

### B. *Hill AFB Plaintiffs*

The Government's motion for partial dismissal of the claims of these plaintiffs attached an agreement that became effective on May 10, 1989 and a declaration from Kay Self, Labor Relations Officer of the Civilian Personnel Branch at Hill AFB, in which she states that "three prior agreements contained identical grievance procedures." [16] Defendant subsequently provided the court with copies of the grievance procedures from the three previous agreements. After reviewing the relevant portions of the May 10 agreement and the prior agreements, the court concludes that pay claims were not excluded from the mandatory grievance procedures. Thus, the court lacks jurisdiction over the claims of the Hill AFB plaintiffs which arose while they were bargaining unit members.

### C. *Patuxent River Plaintiff*

Robert Marvin is the sole Patuxent River plaintiff at issue. He was promoted out of the unit on February 21, 1988. In support of its motion to dismiss Marvin's claims that accrued before his promotion, the Government offers the bargaining agreements between the Naval Air Station and the FOP that became effective on April 23,

---

**16.** The first of these agreements was effective from May 3, 1979 until June 28, 1982; the second from June 28, 1982 until October 22, 1986; and the third from October 22, 1986 until the current agreement became effective.

1980 and on August 12, 1983. After reviewing the relevant portions of the 1980 and 1983 agreements, the court finds that plaintiff's claims are grievances within the bargaining agreement and that the claims are not excluded from the mandatory grievance procedures. Thus, the court lacks jurisdiction of Marvin's claims which accrued before he was promoted out of the unit. *See Aamodt,* at 721 n. 10.

### D. *Pearl Harbor Plaintiffs*

In support of its motion to dismiss the claims of these plaintiffs, the Government offered the relevant excerpts of the bargaining agreements between the Pearl Harbor Naval Station Police Department and the AFL–CIO, Local 882, that became effective on May 5, 1982 and September 18, 1985. The Government also provided relevant excerpts of the bargaining agreement between the Pearl Harbor Police Department and the FFA that became effective on September 20, 1989. Plaintiffs point out that each of these agreements provided that the duration of the agreement would be for three years from the date of execution. The agreements were executed on April 5, 1982 (effective May 5, 1982 through April 5, 1985), August 19, 1985 (effective September 18, 1985 through August 19, 1988), and August 24, 1989 (effective September 20, 1989 through August 24, 1991). Plaintiffs argue that there are "gaps" in coverage from April 6, 1985 to September 17, 1985, and from August 20, 1988 through September 19, 1989. Because of the gaps, plaintiffs contend that the Government has failed to establish that there was a bargaining agreement applicable to plaintiffs' claims at all relevant times.

■ Even though it is true that a bargaining agreement may expire (unless otherwise agreed between the parties), the terms of the expired contract normally remain in effect. The Federal Labor Relations Authority has consistently held that

existing personnel policies, practices, and matters affecting working conditions, established pursuant to the parties' mutual obligation to negotiate over mandatory subjects of bargaining, continue to the maximum extent possible, upon the expiration of a negotiated agreement, absent an express agreement to the contrary or unless modified in a manner consistent with the Statute.

*United States Gov't Printing Office and Joint Council of Unions,* 29 F.L.R.A. 98 (1987); *Federal Aviation Admin., Northwest Mountain Region,* 14 F.L.R.A. 644, 647 (1984); *United States Nuclear Regulatory Comm'n,* 6 F.L.R.A. 18 (1981).

This is true even when there has been a change in exclusive union representative, as with the present case:

We see no distinction in the circumstances of this case where there has been a change in the exclusive representative since the expiration of the agreement. The stability of the new bargaining relationship is enhanced by a required maintenance of existing personnel policies and practices, and matters affecting working conditions pending negotiation of a new agreement.

*United States Nuclear Regulatory Comm'n,* 6 F.L.R.A. at 18; *see also Federal Aviation Admin. Washington, D.C. and Professional Airways Sys. Specialists, MEBA,* 20 F.L.R.A. 273 (1985); *United States Customs Serv. and Nat'l Treasury Employees Union,* 18 F.L.R.A. 263 (1985); *Department of Transp., Fed'l Aviation Admin. San Diego, California and Professional Airways Sys. Specialists,* 15 F.L.R.A. 407 (1984).

In this case, the grievance procedure that existed under each of the bargaining agreements continued in effect until the next agreement was signed. Peter Pappalardo, Senior Labor Advisor at the Consolidated Civilian Personnel Office which provides labor relations guidance to the Naval Station at Pearl Harbor, stated in a declaration that grievances were filed and adjudicated continuously even during the period when the bargaining agreement had expired. Since there were no "gaps" in plaintiffs' right to file a grievance and since these plaintiffs in fact had the opportunity to grieve at all times, they cannot now invoke the jurisdiction of this court. The court

lacks jurisdiction of the Pearl Harbor plaintiffs' claims which arose while they were bargaining unit members.

## CONCLUSION

For the reasons expressed above, and there being no just reason for delay, the court grants defendant's motion for partial dismissal. In accordance with this order, the Clerk is directed to enter judgment pursuant to RUSCC 54(b) dismissing the claims of all plaintiffs listed in the Attachment.[17]

## ATTACHMENT

*Abella v. United States*, No. 632–89C (Cl.Ct. November 20, 1989): Abraham A. Abella, Thomas Atou, Jr., William L. Avery, Freeman Baker, John M. Ball, Loren E. Barton, Frank Vernon Baptiste, Michael Benson, Francisco O. Borja, Don R. Carmichael, Inocencio Casillano, Primo D. Castro, Sr., Julito R. Cayaban, Robert S. Chong, Thomas D. Clark, Donald K. Coppage, Kenneth Curry, Robert J. Darling, Edsel E. Davis, Robert A. Domdoma, James G. Donovan, David Lee Dunnavant, Charles E. Eary, Leroy R. Eilers, Donald E. Eisel, Antonio P. Enriquez, Romulo G. Esmeraldo, Rudolph Eugenio, Salvador G. Farias, Richard Ferreira, Melvin P. Fuller, Manuel A. Garcia, William H. Giddens, Glenn Gomes, Ivan B. Gray, James T. Green, Jon M. Heikka, Yolanda N. Heikka, Robert Helser, Charles C. Hensel, Walter G. Higa, George C. Holewyne, Joseph J. Holliday, Alton E. Howell, Warren Lee Ickes, Catalino M. Ignacio, Roger L. Jacobson, Barry E. Jerkins, Joseph Johnson, Darrell J. Julian, Anthony K. Kalili, Sr., Larry K. Kamai, Wilson S. Kerisiano, Arthur J. King, Danny E. King, Edward T. Kostiha, James N. La Fountaine, Gene Lagmay, John W. Long, Eleazar O. Malaki, Lawrence K. Manini, Jr., Thomas J. Martel, Richard McLeod, Charles T. Melim, Harry E. Montgomery, Thomas H. Moon, Juan A. Morales, Bruce B. Muirhead, Ali O. Muslim, Cleefer L. Nelson, Jr., Nelson B. New, James F. Niemeier, Elmer P. Nolasco, Antonio D. Padilla, Henry P. M. Paiaina, Stanford W. Papas, Ralph R. Pasatiempo, Gerry Patterson, Tommy C. Payne, Walter Powell, Jr., Darrell Prewitt, Fred Puliafico, Gilbert Quiniola, Joseph A. Raspanti, Robert E. Reichling, III, Solomon C. Rivera, James H. Robinson, Gordon A. Roe, William G. Royston, James A. Rozkiewicz, Ricardo T. Santos, Sue A. Satterthwaite, Juan M. Sauceda, Margaret Schroeder, William J. Short, Jr., Ralph Shrinski, John M. Spytko, David E. Stark, Larry V. Stevens, Howard T. Stone, James A. Takata, Kendal M. Tilghman, Joe P. Vargas, Harry Vincent, Andrew Von Werder, Dexter E. Whitmire, Jonathan C.M. Wilson, Seth R. Wilson, Allen C. Witbeck, Sr., Timothy Lee Wolf, John R. Womelsdorf, Raymond C.F. Wong, Michael H. Young, and John J. Yuson.

*Adams v. United States*, No. 568–89C (Cl.Ct. October 18, 1989): Richard A. Hagerman and Mary E. Martin.

*Aiken v. United States*, No. 690–89C (Cl.Ct. December 21, 1989): Michael D. Bingham, Gene R. Bone, Harold R. Burke, Alton D. Dugmore, James R. Edward, Jr., Walter H. Gardner, Salvadore L. Marchese, Raymond A. Salazar, Thornton Tinnaman, and Robert R. Van Dyke.

*Anderson v. United States*, No. 90–53C (Cl.Ct. January 17, 1990): Clarence D. Christensen and James C. Dahl.

---

17. As to the plaintiffs who were promoted, only those claims accruing before promotion are dismissed. *See Aamodt*, at 721 n. 10. These persons otherwise remain plaintiffs, and they are not listed in the Attachment.