George C. ARMITAGE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 139–89C, 568–89C, 632–89C, 690–89C and 90–53C.

United States Claims Court.

June 20, 1991.

Ira M. Lechner, Washington, D.C., for plaintiffs. Michael B. Waitzkin and Rima Sirota of counsel.

Agnes M. Brown, with whom were Acting Asst. Atty. Gen. Stuart M. Gerson, and David M. Cohen, Washington, D.C., for defendant.

OPINION

BRUGGINK, Judge.

This case is before the court on the parties' cross-motions for partial summary judgment, plaintiffs' motion for reconsideration of the court's October 5, 1989 order denying class certification, 18 Cl.Ct. 310, and plaintiffs' motion for leave to file an amended complaint in one of the consolidated cases.[1] The remaining plaintiffs[2] in these consolidated cases allege that they were and are entitled to overtime and premium pay for regularly scheduled overtime, Sunday and holiday hours during authorized absences from work under the "leave with pay" provisions of the Federal Employees Pay Act ("Title 5").[3] *See* 5 U.S.C. §§ 6303 (annual leave), 6307 (sick leave), 6322 (court leave), and 6323 (military leave) (1988). Specifically, plaintiffs assert that, under the rationale of *Lanehart v. Horner*, 818 F.2d 1574 (Fed.Cir. 1987), and the regulations and guidance promulgated by the Office of Personnel Management ("OPM") for the implementation of *Lanehart*, they are entitled to the premiums and overtime pay they would have earned had they worked regularly scheduled Sundays, holidays, and overtime hours. In *Lanehart*, the Federal Circuit held that Title 5 permitted firefighters to be paid at overtime rates based on inclusion of hours not actually worked, but credited because of annual, sick, court, and military leave.

There are three issues presented: 1) whether the statutes authorizing leave with pay require that federal employees be paid for regularly scheduled overtime hours when they take leave during their basic workday but do not work the overtime hours; 2) whether the leave with pay statutes require that federal employees be paid premium pay for regularly scheduled Sunday hours when they do not work on the Sunday; and 3) whether the leave with pay statutes require that federal employees be paid premium pay for regularly scheduled holiday hours when they do not work on the holiday. Like other similar actions currently pending before the court or recently decided, the complaint raises difficult questions arising from attempts to mesh the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1988) and Title 5.

The parties have briefed the issues based on the representative facts of 23 of the plaintiffs who were regularly scheduled to work Sundays, holidays, and overtime hours. As to these plaintiffs, the material facts as to liability are undisputed. For the reasons discussed below, the court denies plaintiffs' motion for reconsideration of the denial of class certification, and grants plaintiffs' motion for leave to file plaintiffs' first amended complaint. The court also concludes that plaintiffs are enti-

---

1. Plaintiffs move to amend the complaint in *Richard A. Adams v. United States*, No. 568–89C (Cl.Ct. filed Oct. 18, 1989).

2. There are 287 plaintiffs named in the consolidated cases. However, 19 plaintiffs named in *Adams v. United States*, No. 568–89C (Cl.Ct. Oct. 18, 1989), were mistakenly named again in *Aiken v. United States*, No. 690–89C (Cl.Ct. Dec. 21, 1989). Also, on December 20, 1990, the court granted plaintiffs' motion for partial summary judgment as to 19 of the plaintiffs. *Armitage v. United States*, 22 Cl.Ct. 206 (1990). The defendant conceded liability as to these plaintiffs pursuant to the holding in *Lanehart v. Horner*, 818 F.2d 1574 (Fed.Cir.1987), but argued that the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1988), two year statute of limitations applied to their claims. The court disagreed with defendant and held that the claims were subject to the six year statute of limitations applicable to claims under Title 5.

See also *Acton v. United States*, 932 F.2d 1464 (Fed.Cir.1991). On May 29, 1991 the court adopted an annotated version of the parties' joint stipulation for recovery as to those 19 plaintiffs and dismissed their claims. On April 18, 1991, the court dismissed 129 of the plaintiffs pursuant to 5 U.S.C. § 7121(a)(1) and the holding in *Carter v. Gibbs*, 909 F.2d 1452 (Fed. Cir.) (*en banc*), cert. denied, — U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). On June 18, 1991, the court requested further briefing as to the claims of 20 plaintiffs employed at National and Washington Dulles International Airports in light of the Supreme Court's recent decision in *Metropolitan Washington Airports Authority v. Citizens for the Abatement of Aircraft Noise*, — U.S. ——, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991). The claims of one other plaintiff, Vernon R. Ostlund, identified in *Aiken*, No. 690–89C, will be addressed in a separate order.

3. 5 U.S.C. § 5101 *et seq.* (1988).

tled to Sunday premium pay for hours which they chose not to work and for which they were charged annual or sick leave, but are not entitled to holiday premium pay or overtime pay for hours which were regularly scheduled but not worked and for which no annual or sick leave was charged. Finally, the court concludes that plaintiffs are entitled to overtime pay and Sunday and holiday premium pay under the military and court leave statutes if plaintiffs were treated as on leave during unworked but regularly scheduled overtime, Sunday, and holiday hours. Thus, plaintiffs' motion for summary judgment is granted in part and denied in part and defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The remaining plaintiffs are or were employed by defendant as police officers at various facilities throughout the United States including: the Naval Weapons Center, China Lake, California; the United States Secret Service, Department of the Treasury, Washington, D.C.; the Naval Air Station, Patuxent River, Maryland; and the Naval Station, Pearl Harbor, Hawaii. The parties have briefed the issues based on the undisputed facts presented by the China Lake plaintiffs. However, since this opinion addresses liability as to all plaintiffs, each group of plaintiffs will be briefly described.

### China Lake Plaintiffs

The China Lake plaintiffs [4] are or were law enforcement officers who were regularly scheduled to work Sundays, holidays, and overtime hours. The basic workweek for the China Lake plaintiffs is 40 hours, comprised of five eight-hour days. *See* 5 U.S.C. § 6101. They receive overtime pay under 5 U.S.C. § 5542 for all hours worked in excess of eight hours in a day or 40 hours in a week, and receive premium pay for hours worked on Sundays and holidays pursuant to 5 U.S.C. §§ 5546(a) and 5546(b). The China Lake plaintiffs accrue

annual and sick leave pursuant to 5 U.S.C. §§ 6303(a) and 6307(a).

Prior to October 1, 1987, the China Lake plaintiffs were regularly scheduled to work nine and a half hours per day, five days per week. They received eight hours of regular pay and one and a half hours of overtime pay. From October 1, 1987, to the present, the China Lake plaintiffs have been regularly scheduled to work nine hours per day, five days per week, for which they receive eight hours of regular pay and one hour of overtime. Plaintiffs have also been regularly scheduled to work on Sundays and holidays and have received premium pay when they worked on such days. The China Lake plaintiffs are not put in a "leave status" and their annual and sick leave accounts are not debited when they choose not to work overtime that they are otherwise regularly scheduled to work. Nor do they accrue annual or sick leave for overtime hours worked. Plaintiffs are not required to take annual or sick leave if they were excused from working a regularly scheduled shift that falls on a holiday, but are required to take annual or sick leave if they chose not to work on a Sunday that is part of their regularly scheduled workweek. When these plaintiffs take eight hours of annual or sick leave on a regularly scheduled Sunday or nonholiday day of work, they receive eight hours of regular pay and no overtime pay or Sunday premium pay. When these plaintiffs are absent on a regularly scheduled day of holiday work, they do not receive holiday premium pay. It is not clear whether plaintiffs were in a military or court leave status when they were absent from their regularly scheduled overtime, Sunday or holiday hours due to military and court obligations.

### Secret Service Plaintiffs

The plaintiffs in this group [5] are security officers employed by the Secret Service in Washington, D.C. Like the China Lake

---

**4.** The plaintiffs are identified in *Adams v. United States,* No. 568–89C (Cl.Ct. filed Oct. 18, 1989), *Aiken v. United States,* No. 690–89C (Cl. Ct. filed Dec. 21, 1989), and *Armitage v. United States,* No. 139–89C (Cl.Ct. filed Mar. 17, 1989).

**5.** These plaintiffs are identified in *Adams v. United States,* No. 568–89C (Cl.Ct. filed Oct. 18, 1989).

plaintiffs, the Secret Service plaintiffs allege in their complaint that they have been wrongfully denied Sunday and holiday premium pay. Like the China Lake plaintiffs, these plaintiffs are regularly scheduled to work on Sundays and holidays and receive premium pay when they work on such days. In their motion for leave to file plaintiffs' first amended complaint, these plaintiffs also allege that they are regularly scheduled to work 15 minutes of overtime per shift and that they are not compensated for this regularly scheduled overtime when they take authorized leave with pay during their basic eight-hour workday. Thus, plaintiffs' legal claims are identical to those of the China Lake plaintiffs.

*Patuxent River Plaintiff* and *Pearl Harbor Plaintiffs*

These plaintiffs [6] were employed as police officers at various military facilities. At some point after their claims arose, they were promoted from the positions they held when their claims arose and were no longer members of a collective bargaining agreement. Because these plaintiffs were required to raise claims arising before their promotion within their negotiated grievance procedures, the claims before the court, if any, only pertain to claims arising after their promotion. *See Armitage v. United States,* 22 Cl.Ct. 767 (1991) (modified by order April 23, 1991); *see also Aamodt v. United States,* 22 Cl.Ct. 716 (1991), *appeal filed,* No. 91–5101 (Fed.Cir. filed May 24, 1991). These claims, if any, are identical to those of the China Lake plaintiffs for overtime pay and Sunday and holiday premium pay.

## DISCUSSION

Plaintiffs claim that the rule announced in *Lanehart* regarding the inclusion of regularly scheduled overtime hours in the calculation of pay during paid periods of authorized leave should be extended to federal employees who are not employed as firefighters, but who also perform regularly scheduled overtime, and who are excused from working the overtime. Moreover, plaintiffs claim that the rationale of *Lanehart* requires defendant to include Sunday and holiday premium pay in the quantum of pay due to employees during authorized absence from work. Defendant counters that plaintiffs' claims find no support in *Lanehart* or in the statutory scheme upon which it was grounded. Specifically, defendant argues that *Lanehart* and the leave with pay statutes do not apply unless the plaintiffs were actually on leave during the hours for which they claim overtime, Sunday and holiday premium pay.

*Lanehart v. Horner*

Because the court is of the view that the results as to the plaintiffs at bar turn on the precise facts and holding of the *Lanehart* decision, that case will be discussed in some detail. The narrow issue posed in *Lanehart* was whether the leave with pay provisions of Title 5 [7] entitle federal firefighters to an undiminished amount of overtime pay when they take leave. The firefighters in that case worked six 24–hour shifts for a total of 144 hours per bi-weekly pay period. They were entitled to overtime compensation under the FLSA for hours worked in excess of 106 per bi-weekly pay period. 29 U.S.C. § 207(k). Accordingly, they received FLSA overtime compensation for all duty hours in excess of 106 per pay period. They also received standby premium under 5 U.S.C. § 5545(c)(1) in lieu of all other premium pay that can be earned under Title 5 (except

---

**6.** These plaintiffs are identified in *Abella v. United States,* No. 632–89C (Cl.Ct. filed Nov. 20, 1989) and *Armitage v. United States,* No. 139–89C (Cl.Ct. filed Mar. 17, 1989).

**7.** "Leave with pay" is used generally to refer to the four leave statutes. Section 6303 provides, in pertinent part, that: "(a) An employee is entitled to annual leave with pay...." Section 6307 provides, in pertinent part, that: "(a) An employee is entitled to sick leave with pay...." Section 6322 provides, in pertinent part, that:

"(a) An employee ... is entitled to leave, without loss of, or reduction in, pay, leave to which he otherwise is entitled, ... in connection with a judicial proceeding...." Section 6323 provides, in pertinent part, that: "(a)(1) [A]n employee ... is entitled to leave without loss in pay ... for active duty or engaging in field or coast defense training under sections 502–505 of title 32 as a Reserve of the armed forces or member of the National Guard."

overtime pay for irregular, unscheduled overtime).

It is important to note that the firefighters in *Lanehart* earned and used leave at an accelerated rate because of their uncommon tour of duty. FPM Supp. 990–2, book 630, subch. S2–6(b)(3) (Nov. 18, 1970). Moreover, they were required to take leave for any hours of absence during their regular tour of duty, including those hours for which they received FLSA overtime. *Id.* subch. S2–6(b)(1). Thus, when the firefighters took a day of leave, their leave accounts were charged 24 hours of leave; when they took leave for an entire pay period, they were charged 144 hours of leave.

The Federal Circuit's opinion in *Lanehart* focused on whether the four leave with pay provisions of Title 5 entitled plaintiffs to an undiminished amount of pay for periods in which authorized leave was taken. The Government in *Lanehart* argued that firefighters were not entitled to any overtime pay under the FLSA for paid hours not worked because the FLSA overtime provision excludes authorized leave from the definition of "hours worked" for calculating overtime hours. 5 C.F.R. 551.-401(b) (1990). The Government contended that, because the FLSA overtime provision requires actual attendance at work, no liability for overtime could attach on days of leave.

The Federal Circuit focused instead on whether the four "leave with pay" provisions of Title 5 entitled plaintiffs to an undiminished amount of pay for periods in which authorized leave was taken. In its discussion, the court in *Lanehart* made clear that the source of the Government's liability lay in the Title 5 leave with pay

statutes. After an extensive analysis of the meaning of "pay," including the legislative history of the pay statutes, the court concluded:

> [T]he "leave with pay" statutes in their purpose and effect prevent any reduction in the customary and regular pay of the appellants, including overtime pay under Title 29 to which they would have been entitled, *when appellants are on authorized leave under sections 6303, 6307, 6322 and 6323.*

*Lanehart,* 818 F.2d at 1583 (emphasis added). The court recognized that FLSA overtime compensation is reduced during periods of leave but also recognized that "such reduction is recouped by the employee under the 'leave with pay' provisions." *Lanehart,* 818 F.2d at 1582. In sum, the Federal Circuit held that the firefighters were entitled to pay for regularly scheduled overtime under the leave with pay statutes despite the fact that they would not be entitled to overtime pay for the same period under the FLSA.[8]

Shortly after the Federal Circuit ruled in *Lanehart,* OPM issued FPM letter 551–22 which introduced regulations and offered guidance to agencies for implementing the decision. In the letter, OPM acknowledged that the reasoning of *Lanehart* required that hours of paid absence, for other types of workers, as well as firefighters, should be counted as if they had been worked for purposes of determining entitlement for overtime pay under the FLSA.[9] The effect of this determination was to require agencies to recalculate the overtime pay for certain groups of employees to determine if they had an increased entitlement to overtime pay under the FLSA.

---

**8.** Under the FLSA, federal employees are compensated for "hours of work." Prior to *Lanehart,* "hours of work" did not include hours of leave. *Compare* 5 C.F.R. § 551.401(b) (1987) *with* 5 C.F.R. §§ 551.401(b), 551.401(c) (1990).

**9.** OPM promulgated an interim rule adopting *Lanehart* and inviting comments as to its proposed conclusion that the *Lanehart* rationale applies to all federal employees who regularly receive overtime pay. 52 Fed.Reg. 47,687 (1987). In finally adopting a government-wide regulation, OPM rejected the comments of cer-

tain agencies which argued that the *Lanehart* doctrine should be limited to firefighters:

> We do not believe it would be prudent to limit the applicability of *Lanehart* to Federal firefighters because the decision of the Court of Appeals for the Federal Circuit makes it clear that the same rationale would apply in the case of any federal employee who receives additional compensation for overtime work on a "customary and regular" basis.

53 Fed.Reg. 27,147 (1988).

*Compensation During Annual and Sick Leave*

Federal employees who are absent from work because of authorized annual and sick leave receive leave with pay. 5 U.S.C. §§ 6303(a), 6307(a). Section 6303(a) provides:

(a) An employee is entitled to annual leave with pay which accrues as follows—

(1) one-half day for each full biweekly pay period for an employee with less than 3 years of service;

(2) three-fourths day for each full biweekly pay period, except that the accrual for the last full biweekly pay period in the year is one and one-fourth days, for an employee with 3 but less than 15 years of service; and

(3) one day for each full biweekly pay period for an employee with 15 or more years of service.

Sick leave is also calculated on the basis of a "day." Employees accrue one-half "day" of sick leave for each bi-weekly pay period. 5 U.S.C. § 6307(a).

■ The Federal Circuit held in *Lanehart* that the leave with pay statutes prevent any reduction in the "customary and regular pay" of federal firefighters, including overtime pay and Sunday and holiday premium pay under the FLSA when they are on leave. Plaintiffs argue that the rule announced in *Lanehart* should be extended to all federal employees to guarantee that on days when they were authorized to be absent from work, they will receive the same pay as they customarily would have received had they worked their regular schedule of hours, including overtime, Sunday, and holiday hours. Defendant contends, however, and this court agrees, that *Lanehart* and the leave with pay statutes do not apply unless the agencies actually treated plaintiffs as on annual or sick leave during the regularly scheduled overtime, Sunday, and holiday hours to which they claim entitlement.

10. See discussion *infra* n. 11.

A. Overtime Pay

It is most apparent in the claim for overtime compensation that plaintiffs' argument is not an application of *Lanehart* but an extension of it. A quotation from one of plaintiffs' briefs illustrates: "[T]he question of whether the China Lake plaintiffs were technically on 'leave' is entirely irrelevant. So long as the employees were either on authorized leave or excused from work, payment is required." Brief of April 23, 1990, p. 5. Nothing in the *Lanehart* decision itself, however, or in the implementing regulations [10] mandates that excused absence from duty assignments is for all purposes equivalent to one of the statutory leave statuses.

Crucial to the reasoning of *Lanehart* is a fact ignored by plaintiffs. The plaintiffs in *Lanehart*, unlike the plaintiffs in this case, accrued annual and sick leave when they worked overtime during their regularly scheduled shifts and were charged leave when they did not work the regularly scheduled hours during which they would have received FLSA overtime pay had they worked. Under OPM's leave regulations, the firefighters have what is defined as an "uncommon tour of duty." *See* 5 C.F.R. § 630.210. As such, unlike the plaintiffs in this case, firefighters accrue annual and sick leave for regularly scheduled overtime hours and are required to take leave when they do not work their regularly scheduled overtime hours. Specifically, FPM Supplement 990–2, book 630, subch. S2–6(b)(1) provides for the accrual of additional leave as a result of the firefighter's extended tour of duty and that "[t]he accrual of leave on this basis contemplates that the employee concerned will be charged for all hours of absence from his scheduled tour."

■ Unlike firefighters, the plaintiffs in this case were not placed in a leave status and their leave account was not charged when they were excused from working regularly scheduled overtime on days which they took eight hours of annual or sick leave. Their attendance was excused, and they simply did not work. Their nonappearance for overtime was authorized and

they were not paid for those overtime hours that they did not work. For these employees, unlike the firefighters in *Lanehart,* the leave with pay statutes do not come to bear, unless plaintiffs can demonstrate that they should be treated as actually on leave. In the absence of such a showing, the precise holding of *Lanehart* does not assist plaintiffs with respect to regularly scheduled overtime. *Lanehart* held only that an employee is entitled not to have his pay reduced when "on authorized leave under sections 6303, 6307, 6322, and 6323." 818 F.2d at 1583.

Plaintiffs concede that they were not treated as on annual or sick leave for absences from work during overtime hours. But, they argue that the Government has misapplied the annual and sick leave statutes by failing both to credit their leave accounts based on hours of overtime regularly worked and to debit their accounts for hours of unworked overtime while on authorized absence. In this respect, their position has changed somewhat during the extensive briefing on these issues. In one of their early briefs, plaintiffs recite that "[w]hether the China Lake plaintiffs should have been credited leave for working overtime, and debited leave when they did not, is an issue for another day and another lawsuit." Brief of April 23, 1990, p. 6. Plaintiffs presently contend, however, that if the Government properly credited and debited their annual and sick leave accounts, plaintiffs would have earned more leave by being credited with the additional overtime hours. Thus, like the firefighters in *Lanehart,* they could have had their expanded leave banks debited for overtime hours during excused absences. If that had occurred, they would be entitled to overtime pay for authorized absence from work under the leave with pay statutes and the rationale of *Lanehart.* Plaintiffs are in effect asking this court to declare that the plaintiffs were in annual leave or sick leave status, when they were not, so that the leave with pay statutes and the rationale of *Lanehart* apply.

OPM has been charged with prescribing regulations for administration of the statutory scheme for establishment of a workweek and accrual of leave. 5 U.S.C. §§ 6101(c), 6311. In implementation of that authority, OPM has consistently construed the "basic administrative workweek" to consist of 40 hours, and the "basic administrative workday" to be eight hours. Declaration of Donald J. Winstead, former Chief of OPM's Pay and Leave Administration Division, p. 1 (appendix to defendant's brief of Feb. 4, 1991). For purposes of annual leave accrual under section 6303, and sick leave accrual under section 6307, OPM has consistently construed "day" to mean the basic eight-hour administrative workday. *Id.* at 2. OPM has not construed "day," for purposes of leave accrual, to include overtime hours, either regularly scheduled or irregularly scheduled. *Id.*

OPM regulations provide that agencies "having employees who work 24-hour shifts or other uncommon tours of duty *may* prescribe supplemental regulations consistent with [5 U.S.C. §§ 6301–6326 (the "Leave Act")] . . . for administering leave for these employees." 5 C.F.R. § 630.210 (emphasis added). An agency may thus provide that employees will accrue and use leave on the basis of an uncommon tour of duty. The firefighters in *Lanehart* were subject to just such a provision. However, no agency is required to prescribe such regulations. Where such regulations have not been prescribed by the agency, employees with uncommon tours of duty continue to accrue and use leave on the basis of the basic eight-hour administrative workday.

In the case of the China Lake plaintiffs, the Department of the Navy has not prescribed regulations providing that these plaintiffs accrue and use leave on the basis of an uncommon tour of duty. The Navy has instead established regulations providing that annual leave may only be charged for absences taken during the normal 40-hour basic workweek. Paragraph 4, Chapter III of the TLP Manual provides: "Leave may be charged only for absences during the 40-hour basic workweek, except for employees with uncommon tours of duty." Navy Office of Civilian Personnel

Management Instruction 12630.1, dated June 17, 1988, provides in pertinent part:

S2–4. LEAVE CHARGES

c. *Effect of minimum charge.* Except as provided for employees with uncommon tours of duty, leave may be charged only for absence during the 40–hour workweek (tour of duty). Thus, an employee working a nine-hour day when the ninth hour is overtime is charged only eight hours of leave for approved absence on such a day.

The employing agency in this case has thus adopted its own regulations which specifically embrace the plaintiffs' factual circumstances. To succeed in this action, therefore, plaintiffs must demonstrate that the administrative implementation is inconsistent with the leave with pay statutes.

Plaintiffs attempt to do exactly that. They contend that OPM's interpretation of the word "day" in the annual and sick leave statutes, and the Navy's implementation of that interpretation, is inconsistent with Congress' intent in using the word "day." Specifically, plaintiffs argue that the leave statutes entitle them to accrue and use leave on the basis of their actual work day, not their eight-hour administrative day. Plaintiffs' approach would require agencies to put plaintiffs in annual or sick leave status when they are absent from work during regularly scheduled overtime, and would thus entitle them to overtime under *Lanehart.*

It is not clear what Congress intended by using the word "day." The leave with pay statutes do not define the word and plaintiffs offer no legislative history regarding the meaning of a day. Plaintiffs offer little other guidance except to argue that if Congress intended an employee's day to be an eight-hour day, it would have stated the specific number of hours instead of using the word day in the leave statutes.

In order to support this contention plaintiffs first point to 5 U.S.C. § 6129 which provides that, for employees with compressed or flexible schedules, "references to a day or workday ... contained in [sections 6303(a) and 6307(a)] shall be considered to be references to 8 hours." They argue that the designation of a day in section 6129 as equalling eight hours for certain employees would have been entirely unnecessary had Congress intended a day under section 6303(a) or 6307(a) to be eight hours for all employees.

Section 6129 offers little support for plaintiffs' interpretation. That section does not purport to define or expand or limit some pre-existing definition of a day. It merely ensures that an employee whose 40–hour workweek has been compressed into four 10–hour workdays does not accrue (or use) annual leave any faster than an employee working 40 hours over the course of five days. Section 6129 could just as easily be read to support the proposition that even for employees with flexible or compressed work schedules a day is considered to be eight hours, regardless of how many hours the employee works on any given day.

Plaintiffs' other arguments draw on random provisions of OPM's regulations to create apparent inconsistencies with OPM's interpretation of the meaning of the term "day" and the eventual application of that interpretation, namely that employees are not charged leave for unworked regularly scheduled overtime. They rely, for example, upon the language of 5 C.F.R. § 610.-111 which provides that the head of each agency must establish by regulation two distinct work periods with respect to each full-time employee:

(1) A basic workweek of 40 hours....

(2) A regularly scheduled administrative workweek that consists of the 40–hour basic workweek ... plus the period of regular overtime work, if any, required of each employee. Except as provided in paragraphs [not relevant to these plaintiffs], the regulation, for purposes of leave and overtime pay administration, shall specify by days and hours of each day the periods included in the regularly scheduled administrative workweek that do not constitute a part of the basic workweek.

Plaintiffs argue that through this regulation OPM has created the regularly scheduled administrative workweek "for pur-

poses of leave and overtime pay administration." According to plaintiffs, this regulation mandates that leave administration depends on the employee's day within the regularly scheduled administrative workweek, not the 40–hour basic workweek. The regularly scheduled administrative workweek is different from the basic administrative workweek used by the Government as the basis for leave accrual in that the regularly scheduled administrative workweek includes overtime hours.[11] Thus, the China Lake plaintiffs argue that their leave accrual should be based on their 45 or 47½ hour regularly scheduled administrative workweek.

Plaintiffs' conclusion is not supported by the cited regulation. First, the section does not purport to define day for the purposes of leave and overtime pay administration. Second, the cited language is equally supportive of the conclusion that leave generally is accrued and used only upon the basis of the 40–hour basic workweek. The regulation does not state whether hours in excess of a basic workweek are included or excluded for purposes of calculating leave. They simply have to be distinguished. That could be compatible with assuming accrual of leave based only on a 40–hour workweek. Finally, if section 610.111 were meant to be a definition of a day, there would be no reason to require agencies to "specify by days and hours of each day the periods included in the regularly scheduled administrative workweek that do not constitute a part of the basic workweek." If plaintiffs' reading of the regulation were correct, a day would simply become the period of scheduled daily work within the regularly scheduled administrative workweek. There would be no reason, for purposes of leave administration, to delineate what hours do not constitute part of the basic workweek.

Plaintiffs also point to 5 C.F.R. § 630.205 which directs that "[w]hen the number of hours of duty in a full-time employee's workday is permanently changed, the leave to his credit is converted to the proper number of hours based upon the new workday." Plaintiffs argue that this regulation would be a nullity if a day was always defined to be eight hours long. In short, plaintiffs contend that 5 C.F.R. § 630.205 requires that the China Lake plaintiffs' leave credit be converted to an amount based upon a nine hour or nine and a half hour day.

This regulation should be understood within the context of the adjustment in an employee's leave balance that takes place when an employee is converted to an uncommon tour of duty, and when, because of regulations promulgated by the agency, the employee becomes subject to a new method of leave usage and accrual. Section 630.-205 does not provide a basis for concluding that all employees with uncommon tours of duty are entitled to accrue leave upon the basis of the actual length of a workday. The fact that an employee works an uncommon tour of duty does not necessarily mean that his or her leave accrual is based upon a workday of the uncommon tour of duty. Leave accrual changes only when the agency has opted to exercise its discretionary authority under 5 C.F.R. § 630.205 to change the method of accruing and using leave consistent with 5 C.F.R. § 630.-

---

**11.** Section 6101 of Title 5 requires the head of the agency to establish a basic administrative workweek of 40 hours for each full-time employee of the agency. 5 U.S.C. § 6101(a)(2)(A). OPM regulations establish requirements for agencies to follow. The basic workweek for full time employees is defined to mean a 40–hour workweek, 5 C.F.R. §§ 550.103(m), 610.102(c), scheduled on five days, Monday through Friday when possible, 5 U.S.C. § 6101(a)(3)(B). The basic nonovertime workday may not exceed eight hours. 5 U.S.C. § 6101(a)(3)(D). An employee's basic administrative workweek is thus "regularly" scheduled and remains the same from week to week.

Overtime hours are not included in an employee's basic administrative workweek. Overtime hours are hours in excess of eight hours in a day or 40 hours in a week. 5 U.S.C. § 5542(a). "Regularly scheduled" overtime is part of the employee's "regularly scheduled administrative workweek," but is outside of the employee's "basic administrative workweek" as defined in 5 C.F.R. § 610.102(c). Overtime hours, scheduled in advance of the workweek within which the hours are worked, are considered "regularly scheduled" overtime hours. *See* 5 C.F.R. §§ 550.103(p), 610.102(g).

210. The question remains whether plaintiffs have demonstrated an abuse of discretion in the Navy's failure to formally designate their overtime schedule as an uncommon tour of duty.

Defendant offers a compelling argument why plaintiffs' approach is not satisfactory. As defendant points out, plaintiffs' reading of day to include periods of overtime would create a heavy administrative burden throughout the Government. A "regularly scheduled workweek" is one that is scheduled in advance of the administrative workweek. *See* 5 C.F.R. §§ 550.103(p), 610.-102(g). For most employees, the administrative workweek begins on Sunday. Thus, any work scheduled before Sunday would be "regularly scheduled." Therefore, if a supervisor notified an employee as late as Saturday evening that the employee was scheduled for overtime work on Sunday, under plaintiffs' reading of the statute and regulations, that employee's leave usage and accrual rate would have to be changed based upon the regularly scheduled overtime. If, on the following week, the employee was not scheduled in advance to work overtime, or if the number of scheduled overtime hours changed, the employee's leave accrual rate would change again. In short, under plaintiffs' reading, an employee's leave accrual rate could change every pay period, and the opportunity for abuse by the agency and the employee would exist.

█ Plaintiffs have not demonstrated to the court that OPM's interpretation of the meaning of a day in the leave statutes or the defendant's application of that interpretation is facially inconsistent with the statutes. OPM has taken a reasonable approach to interpreting the leave statutes. It is well-settled that courts should show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Nor is it necessary that the agency's "construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Id.* (quoting *Unemployment Compensation Comm'n v. Aragan,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)). *See also Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). The Federal Circuit has also admonished that "the longstanding interpretation placed on a statute by the agency charged with its administration should be followed unless there are compelling reasons that it is wrong." *Money v. OPM,* 811 F.2d 1474, 1477 (Fed. Cir.1987); *see also Young v. Community Nutrition Inst.,* 476 U.S. 974, 980–81, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986); *Horner v. Andrzjewski,* 811 F.2d 571, 574 (Fed.Cir.), *cert. denied,* 484 U.S. 912, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987). Although these general principles could not justify a regulation or policy plainly beyond the authority granted by the statute, that is not the case here.

The court concludes that it was not improper for the defendant not to credit plaintiffs' leave accounts for hours of overtime regularly worked and not to debit their accounts for hours of unworked overtime while on authorized absence. Since the plaintiffs were not on leave they are not entitled to overtime under the leave with pay statutes or the rationale of *Lanehart.* Moreover, plaintiffs are not entitled to overtime pay under the Title 5 overtime provision, 5 U.S.C. § 5542, or the FLSA overtime provision, 29 U.S.C. § 207. Section 5542(a) authorizes overtime pay for "hours of *work* officially ordered or approved in excess of 40 hours in an administrative workweek, or ... in excess of 8 hours in a day ..." (Emphasis added.) Section 207 of Title 29 provides that no one shall be "employ[ed]" in excess of 40 hours a week without receiving the overtime compensation specified in the Act. Accordingly, if the employee did not work overtime, the overtime pay statutes do not entitle him to pay.

### B. Sunday Premium Pay

Plaintiffs assert that their claim for Sunday premium pay for nonworked Sundays during authorized absence flows naturally

from the rationale of *Lanehart.* Defendant counters that the Sunday premium pay statute only authorizes employees who actually work on a Sunday to receive the premium. 5 U.S.C. § 5546(a). Section 5546(a) provides:

> An employee who *performs work* during a regularly-scheduled 8–hour period of service which is not overtime work as defined by section 5542(a) of this title a part of which is *performed* on Sunday is entitled to pay for the entire period of service at the rate of basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

(Emphasis added.) Defendant concedes that employees who are regularly scheduled to work on Sundays are required to take leave if they do not work, but contends that the general leave with pay statutes in *Lanehart* do not overcome the specific limitation on the payment of Sunday premium pay to those who actually perform work on Sunday. The court disagrees.

██ *Lanehart* made clear that when an employee is on authorized leave the " 'leave with pay' statutes in their purpose and effect prevent any reduction in the customary and regular pay of the appellants." 818 F.2d at 1583. The court in effect found that the leave with pay statutes overcome the limitation that employees must actually have worked the hours to have them counted in the overtime calculations. The result should be the same here. Plaintiffs are entitled to Sunday premium pay which was not worked but for which leave was charged. Plaintiffs are entitled to recover backpay to a date six years prior to the filing of their claim. *See Acton v. United States,* 932 F.2d 1464 (Fed.Cir.1991), *Armitage v. United States,* 22 Cl.Ct. 206 (1990).

### C. Holiday Premium Pay

Plaintiffs assert that under the rationale of *Lanehart,* the leave with pay statutes entitle them to the holiday premium pay they would have received under 5 U.S.C. § 5546(b) had they worked. Defendant counters that because the plaintiffs are not on leave when they do not work on a holiday, the leave with pay statutes have no application to holiday premium pay which can only be paid to employees who perform work on a holiday.

██ Plaintiffs are not required to take leave if they do not work on a holiday, regardless of whether the holiday is part of their regularly scheduled tour of duty. Section 6302(a) of Title 5 defines "days of leave" as "days on which an employee would otherwise work and receive pay and are exclusive of holidays and nonworkdays established by Federal statute, Executive order, or administrative order." Accordingly, holidays are not leave days, employees are not in a paid leave status on holidays, and leave is not charged when an employee is excused from working on a holiday. Thus, the leave with pay statutes do not apply and plaintiffs are not entitled to holiday premium pay under those statutes. Because the leave with pay statutes have no application to the pay received by an employee on a holiday, the rationale of *Lanehart* based upon those statutes has no application here.

Nor are plaintiffs entitled to holiday premium pay. Section 5546(b) provides for payment of the premium to "[a]n employee who performs work on a holiday ..." These employees did not perform work on the holidays at issue and thus have no entitlement to holiday premium pay.[12]

---

**12.** Plaintiffs contend that OPM's regulations implementing *Lanehart* mandate that plaintiffs are entitled to holiday premium pay. Section 551.-401(c) of the regulations provides:

> *Paid periods of nonwork* (e.g., leave, holidays, or excused absences) are counted as hours of work for the purpose of this part for an employee who receives:
> (1) Annual premium pay for standby duty under 5 C.F.R. 550.141;
> (2) *Annual premium pay for administratively uncontrollable overtime work under 5 C.F.R. 550.151;* or
> (3) Overtime pay for regularly scheduled overtime work, as defined in 5 C.F.R. 550.-103(p) and 610.102(g).

Plaintiffs are mixing two concepts. This provision merely clarifies that, with respect to holidays, OPM now deems hours of paid absence on a holiday to be "hours of work" for the purpose of determining the employee's FLSA overtime

Plaintiffs rely on *Gahagan v. United States*, 19 Cl.Ct. 168, 175 (1989), in asserting their entitlement to holiday premium pay. That action involved employees of the National Weather Service who regularly earned premium pay for night shifts and holidays. The case arose when the employees requested leave for military or court duty. The agency then shifted their work schedules so that military and court leave coincided only with non-premium pay hours. One of the *Gahagan* plaintiffs was regularly scheduled to work a holiday shift. When the employee informed his agency that he had been summoned to jury duty and could not work during the holiday shift, he was reassigned to a nonholiday shift and thus lost his holiday premium pay during the period of jury duty. The court determined that the Government could not manipulate the employee's regular schedule so that he would not be on authorized leave with pay on the holiday. Because the employee was regularly scheduled to work on the holiday, the Government could not reduce the "employee's regularly scheduled pay solely due to leave for court and military duty." *Id.* at 180.

Plaintiffs argue that *Gahagan* establishes that the entitlement to backpay under *Lanehart* encompasses holiday premium pay. In the case at bar, the issue is whether, under the annual and sick leave statutes, plaintiffs are entitled to holiday premium pay when they were absent for regularly scheduled holiday hours but were not charged annual or sick leave for those non-worked hours. There are at least two important distinctions between *Gahagan* and this case. First, there is no suggestion in this case, as there was in *Gahagan*, that plaintiffs' schedules have been manipulated after they were established. Second, it was clear in *Gahagan* that the plaintiff was actually serving jury duty when he was absent from his holiday shift. Here, the plaintiffs were not in annual or sick leave status when they were absent from

work, and hence they are not entitled to recover. Whether the result would be different in the event of court or military leave is discussed below.

### Compensation During Court and Military Leave

Federal employees who must report to court either for jury duty or as a witness receive leave without loss in pay. 5 U.S.C. § 6322. Section § 6322 provides:

(a) An employee ... is entitled to leave, without loss of, or reduction in, pay ... during a period of absence with respect to which he is summoned, in connection with a judicial proceeding ... to serve—

(1) as a juror; or

(2) other than as provided in subsection (b) of this section, as a witness on behalf of any party in connection with any judicial proceeding to which the United States ... is a party....

Congress provided the same guarantee to federal employees who miss work because of active duty or training as a reserve in the armed forces or national guard. 5 U.S.C. § 6323.

Plaintiffs contend that under these statutes and the rationale of *Lanehart* they are entitled to overtime pay and Sunday and holiday premium pay when they are absent from work due to military or court duty. Defendant again maintains that the plaintiffs must actually be treated as on military or court leave during their regularly scheduled overtime, Sunday, and holiday hours to be entitled to overtime pay under the rationale of *Lanehart* and the court leave and military leave with pay statutes. Moreover, defendant contends that, even if the plaintiffs were on leave during Sunday and holiday hours, plaintiffs must actually perform work at their facility during the regularly scheduled Sunday and holiday hours to be entitled to premium pay under the Sunday and holiday premium statutes. *See* 5 U.S.C. §§ 5546(a), 5546(b).

---

pay entitlement. The effect of this change was to permit hours of leave and holiday hours to be counted towards the threshold number of hours that an employee must "work" before he can qualify for overtime pay under the FLSA. The change created no entitlement to holiday premium pay for an employee who did not work on a holiday. Similarly, plaintiffs cannot argue that because their absences may have been "excused" that they are entitled under this regulation to holiday premium pay or overtime pay for hours not worked.

*Lanehart* has disposed of defendant's latter argument. That case made clear that the leave with pay statutes overcome the specific limitation in the FLSA that overtime must actually be worked for the plaintiffs to be entitled to overtime when they are on leave. Likewise, the force of the holding in *Lanehart* would appear to compel a parallel result with respect to similar limitations in the Sunday premium and holiday premium statutes.

As to defendant's first argument, it is not evident from the parties' briefs whether the plaintiffs were actually treated as on military leave or court leave when they were absent from their regularly scheduled overtime, Sunday, or holiday hours. If the plaintiffs were treated as on court or military leave during those hours, they are entitled to overtime pay and Sunday and holiday premium pay under *Lanehart.* As the court held in that case, the leave with pay statutes "prevent any reduction in the customary and regular pay of the [firefighters], including overtime pay under Title 29 to which they would have been entitled," when plaintiffs are on authorized leave under sections 6322 and 6323. 818 F.2d at 1583. Although the court specifically addressed Title 29 compensation, the result should be the same for Title 5 premium pay when employees are on authorized leave.

If the plaintiffs were not in leave status, the inquiry is whether OPM and the agency properly interpreted and applied the leave with pay statutes in recording plaintiffs' leave status. Unlike the annual and sick leave statutes, the issue of leave accrual and deductions has no bearing on military or court leave since these forms of leave are neither debited nor credited. Moreover, it is important that the agencies properly account for court and military leave. "In enacting §§ 6322 and 6323, Congress recognized that trial by jury and the nation's defense preparedness are preeminent governmental objectives." *Gahagan*, 19 Cl.Ct. at 175.

[W]hen the purpose of the jury/military duty leave provisions is considered, the logic of continuing an employee's regular pay undiminished while on this kind of leave is evident. The employee is in effect permitted to be at a public service duty location, which Congress has determined is not only desirable but should be encouraged by assuring the employee that he will not suffer any pay detriment. We see no basis for holding that a reduction should be allowed in an employee's normal and regular compensation when he is performing a permitted public service at another location.

*Lanehart*, 818 F.2d at 1582. Moreover, as the court notes in *Lanehart* there are differences between the annual and sick leave statutes and the military and court leave statutes:

[T]he words without loss of, or without reduction in, pay, as used in §§ 6322 and 6323(a)(1), are strongly suggestive that an employee's pay should not be diminished in any way while he is on jury or military leave. Utilization of phrases such as "compensation ... otherwise provided by law," unreduced "regular pay" and prevention of "dual compensation" in the legislative history of these provisions confirms that Congress was referring to compensation in the broadest sense.

*Id.* It should also be noted in this context that the Government may not manipulate employees' schedules while they are fulfilling military and court duty so as to reduce the "total compensation or remuneration normally and regularly received." *Gahagan*, 19 Cl.Ct. at 175 (quoting *Lanehart*, 818 F.2d at 1581). In short, further factual inquiry is necessary to determine what plaintiffs' leave records reflect with respect to military and court leave status and whether defendant properly applied the military and court leave provisions.[13]

*Motion for Leave to File First Amended Complaint*

■ On March 19, 1991, plaintiffs filed a motion for leave to file an amended com-

---

**13.** The parties are directed, in further briefing of this issue, to address the authority of the court to correct any administrative error in this regard.

plaint in *Adams v. United States*, No. 568–89C (Cl.Ct. filed Oct. 18, 1989), pursuant to RUSCC 15(a). Plaintiffs in that case seek Sunday and holiday premium pay for hours during authorized absence from work. Plaintiffs seek to amend the complaint for the sole purpose of adding a claim for overtime pay identical to that of the China Lake plaintiffs except as to damages. As this motion will not delay resolution of this matter or prejudice the Government, it is granted.

*Motion for Reconsideration of Class Certification*

■ On October 5, 1989, the court denied plaintiffs' motion for class certification. Pursuant to RUSCC 23, "Class Actions," "[t]he court shall determine in each case whether a class action may be maintained and under what terms and conditions." After considering plaintiffs' original motion, the court found that a class would be unmanageable, and that factual issues would predominate. *Armitage v. United States*, 18 Cl.Ct. 310, 313 (1989). As can be seen from the opinions filed in this case following the court's denial of class certification, resolution of the plaintiffs' claims turn upon facts that vary from facility to facility. Moreover, determinations of liability for each individual employee require review of the facts which vary for each employee. *See Armitage v. United States*, 22 Cl.Ct. 767 (1991) (court found that for employees who are or were covered, when their claims arose, by collective bargaining agreements which did not exclude their claims from grievance procedures, the Civil Service Reform Act's exclusivity provision precluded judicial review of their overtime claims); *Armitage v. United States*, 22 Cl.Ct. 206 (1990) (court found liability for employees who were firefighters and worked 24–hour shifts but reserved ruling on other types of government employees).

Plaintiffs contend that despite the apparent lack of common factual issues, the court should grant class certification so as to toll the statute of limitations. The difficulty with plaintiffs' approach is that unless the class can be appropriately identified and managed, it will be impossible to determine which employee is subject to tolling. "[W]here factual issues are not common among numerous potential plaintiffs, the class action is of no greater value than repetitive lawsuits, since under either form of proceeding separate determinations of each factual issue would remain necessary." *Saunooke v. United States*, 8 Cl. Ct. 327, 332 (1985). This case warrants the type of individualized attention which would not be possible if it were to proceed as a class action. Moreover, the practicability and indeed preferability of individual claims is demonstrated by the numerous separate complaints filed after class certification denial. Reconsideration is denied.

## CONCLUSION

For the reasons expressed above, plaintiffs' motion to amend the complaint is granted, and plaintiffs' motion for reconsideration of class certification is denied. The court grants plaintiffs' motion for summary judgment as to the claim for Sunday premium pay for employees who took annual or sick leave on Sundays and denies plaintiffs' motion as to claims for overtime and holiday premium pay for employees who were absent but not on annual or sick leave during their regularly scheduled overtime and holiday hours. Defendant's motion is denied as to Sunday premium pay under the annual and sick leave statutes and is granted as to claims under the annual and sick leave statutes in all other respects. The parties are directed to confer in an effort to develop a method to determine the amount of plaintiffs' recovery for Sunday premium pay under the annual and sick leave statutes, and to determine plaintiffs' leave status and the amount of plaintiffs' recovery, if any, under the military and court leave statutes for overtime and Sunday and holiday premium pay. The parties' joint status report reflecting whether agreement could be reached, or alternatively setting forth respective positions, shall be filed on or before July 26, 1991.